## Commonwealth v. O'Malley

462

464

*Laurence H. Eldredge,* Special Deputy Attorney General, *Robert L. Kunzig, Henry W. Sawyer, 3rd,* Assistant Deputy Attorneys General, for Commonwealth, and *Theodore L. Reimel,* Assistant District Attorney, also for Commonwealth at first trial.

*Lemuel B. Schofield, W. Bradley Ward, John B. Brumbelow* and *Marvin Comisky,* for defendant.

CARR, P. J., specially presiding, November 23, 1948. —Members of the jury, the indictments against defendant which I am now about to submit to you are

eight in number, and some of them contain many counts or charges, but they are not complicated and will not be hard for you to understand. All relate to the conduct of defendant as a public officer entrusted with a responsible part in the administration of the criminal laws. He is charged with malfeasance or misconduct in office, with corrupt solicitation, and with certain violations of the provisions of the 1937 Magistrates' Court Act.

From the first Monday of January 1942 to the first Monday of the present year, defendant was an elected, qualified, and acting magistrate of the City of Philadelphia, and by appointment of the Governor of the Commonwealth from among the 28 magistrates of the city, was chief magistrate.

The magistrates constitute the minor judiciary of the City of Philadelphia. It is before them that prosecutions are ordinarily begun. When a person accused of a violation of the criminal law is arrested, he is taken before a magistrate, and if the offense of which he is accused is an indictable one, by which I mean an offense for which a person accused can be put upon his trial only after the finding of an indictment by a grand jury, it is the duty of the magistrate to hold a preliminary hearing to determine whether the offense has been committed and whether there is probable cause to believe that the accused has committed it. If it so appears to the magistrate, it is then his duty to hold the accused to bail to appear at the next session of the court of quarter sessions of the county, the court in which you are now sitting, or, in default of bail, to commit him to the county prison to await the convening of the grand jury.

The magistrate's hearing is not a trial. He cannot in such a case finally determine the guilt of any person before him. He has no authority to fine the accused and let him go. He can only determine whether or not

there is enough evidence to justify him in sending the case to this court.

Thus, a magistrate is, as you can see, a preliminary judge, upon whose fidelity in the discharge of the duties of his office the peace and good order of the community in a large measure depend. But, like all other official powers, the power entrusted to magistrates is subject to abuse, and consequently in 1937 the legislature of this State saw fit to regulate in a number of important particulars the manner in which the magistrates of Philadelphia should conduct the business of their courts. These legislative regulations are embodied in an act of assembly known as the 1937 Magistrates' Court Act, of which there are four specific provisions that concern us here. In a moment I shall take up and define for you each of the various charges against the defendant, but before I do so there are some matters of general application that need to be explained to you.

You should have, to begin with, a clear idea of your functions. You are the sole and exclusive judges of the evidence. You should, therefore, never forget that in your province you are sitting as judges, every one of you, just as much as I am in mine, and not as counsel for either side. Your functions differ from mine, but that does not change the fact that you are sitting as judges, and it is as necessary for 'you to maintain a judicial attitude of mind as it is for me to do so. A judicial attitude of mind is one that simply seeks to get at the truth and to render a just judgment, and that applies to you as much as to me. To put it in the simplest sort of way, you are here to determine what has happened. You are not responsible for what has happened, any more than I am, but you are responsible for making an intelligent and common-sense and conscientious effort to find out what the facts are, and to do that uninfluenced by prejudice or sympathy one way or the other. It is my function to rule upon all

questions of law as they arise in the case, to decide what the law is and to instruct you what the law is, and it is your duty to accept what I state to you to be the law applicable to the case without question and without reservation.

In this case evidence has come to us in part from documents and in part from the lips of witnesses. It is your sole province and duty to decide upon the credibility, that is, the believability, of the witnesses and the weight and value that should be given to the testimony of each. Where the testimony is in conflict you will reconcile it if you can. If you cannot, you will have to decide what testimony is believable and what testimony is not believable. In determining what degree of credit a witness should have, you should bring to bear your own intelligent judgment and use such reasonable standards as you would apply in seeking for truth in matters of importance involving your own personal interests. You should consider the manner and appearance of a witness upon the stand, any interest or bias he may have in the case, his opportunity to know the facts whereof he speaks, the reasonableness or unreasonableness of his testimony, the extent to which he may be corroborated or contradicted by other evidence, and any other circumstances tending to shed light upon the truth or falsity of such testimony, and it is for you, in the end, to decide what weight and value you will give to the testimony of each and every witness. Accordingly, you are to take the evidence, weigh it, decide what the facts are, then take the law as I give it to you, without question, apply it to the facts, and thus make up your verdict upon each indictment.

You have heard the witnesses testify and I have. Counsel have heard them. Counsel have argued the evidence to you. I have no doubt that in the course of this trial you have heard counsel disagree as to what

a witness just said a few minutes before. As it is your function to decide what the facts are, you are not bound by anything that counsel have said or that I shall say to you respecting what the testimony is, or any inference logically to be drawn from it; and if, as I refer to the testimony, I inadvertently misstate any of it and your recollection should differ from mine, you are to take the testimony as you recall it, and not as I do. I shall not, of course, go over all the evidence. If I did, it would take me almost as many days as it took to hear it from the witnesses. I shall refer to it only to help you apply it to the respective contentions of the Commonwealth and defendant. If I omit evidence that you think important, you will remember it and bear it carefully in mind, even though I have omitted it.

In this, as in all criminal cases, the burden of proving the guilt of the defendant rests upon the Commonwealth. A person accused of crime is presumed to be innocent, and this presumption remains in his favor throughout his trial until it is overcome by proof of guilt beyond a reasonable doubt. This means that when the trial begins you assume defendant to be innocent. You have heard nothing up to that time indicating that he has committed any offense, and it rests with the Commonwealth to produce evidence which satisfies you of his guilt beyond a reasonable doubt, and not until it has done so may he be convicted. A reasonable doubt is one that would cause you to hesitate to act in any of the important affairs of your own lives. In this definition of reasonable doubt the word "reasonable" is just as important as the word "doubt". The law does not say that a defendant must be proved guilty beyond every possible or imaginary doubt. No case can be proved to that extent. The human mind is capable of imagining a doubt on almost any subject, and if the law said a case had to be proved beyond

every imaginary doubt, there might as well be no court. The standard of proof required of the Commonwealth is proof beyond a *reasonable* doubt. If, then, you are satisfied of the guilt of defendant beyond a reasonable doubt, you should convict him; otherwise, you should acquit him.

Although the Commonwealth must prove the guilt of the defendant beyond a reasonable doubt, guilt need not be proved by direct evidence, but may be deduced from the attending facts and circumstances. In order to warrant conviction on circumstantial evidence, however, the facts and circumstances proved must be of such character as to produce a moral certainty of the guilt of defendant; they must be such as reasonably and naturally to justify an inference of his guilt, and be of such volume and quality as to overcome the presumption of innocence and satisfy the jury of his guilt beyond a reasonable doubt.

Passing to the indictments themselves, I must tell you that certain counts in several of the indictments have been eliminated, and I have prepared for you a brief memorandum which I shall send out with you and which will show you from what indictments counts have been eliminated and the numbers of the eliminated counts. You are not to consider the eliminated counts at all. Their elimination, however, does not in any manner affect the remaining counts.

Now as you will see when you examine them for yourselves, five of the eight indictments, nos. 584 to 587, inclusive, and no. 518, charge defendant with malfeasance or misconduct in office in that, instead of binding over to the court of quarter sessions certain named persons against whom sufficient evidence had been presented to show them probably guilty of the indictable offenses for which they were being prosecuted before him, he willfully and corruptly fined them in sums ranging from $5 to $100. There are now

422 counts of misconduct in office in these five indictments against defendant, after deducting the eliminated counts. In addition, upon the evidence I direct you to return a verdict of not guilty on counts nos. 373 and 374. This leaves 420 counts of misconduct for your consideration, and the gist or essence of the misconduct with which he is charged is that he willfully and corruptly disposed of these cases by imposing fines when he knew that he had no right to impose a fine, and under the law could only hold the man for court or discharge him. Each of the 420 counts is the same except as to the date, the name of the accused, the offense charged, and the amount of the fine. All the offenses charged against the persons brought before him were those which he had no right to dispose of by imposing a fine. They were what the law calls indictable offenses that must be tried and the punishment inflicted in the quarter sessions court. He could hold the accused for court, or, if the evidence was insufficient, he had the right to discharge them, but he had no right, sitting and hearing such a case, to dispose of it by imposing a fine. There is no question that he did just that; the records of his court show it; and it is admitted by the stipulation, made by his counsel, that the record books of his court do show that he did dispose of each of the cases referred to in these counts by imposing the fine set forth in the count. That disposition of those cases, members of the jury, was unlawful, and I so instruct you, and you will be careful to bear that in mind. The suggestion by his counsel that, in at least some of the cases, the defendant imposed the fine for disorderly conduct, is not tenable, for it is flatly contradicted by his own court records and stipulation.

Yet, even though he did unlawfully dispose of these cases by imposing fines, that in itself is not sufficient to constitute the offense of misconduct in office. The

criminal law is not so harsh as to say that a judicial officer who acts in good faith and is honestly and truly mistaken in what he does is to be held criminally liable; and if you believe that he acted in good faith, he ought to be acquitted. Therefore, in connection with these five indictments you will have to decide whether he did act in good faith. That is the real and true question for you to decide. It is a single and simple question, and as you decide it your verdict on these counts should be.

On the question of his good faith I tell you that it was his duty in administering his office to make a reasonable effort to inform himself as to what the law required him to do, and you may consider that in determining whether he did know what the law required of him, whether he knew that he had no right to fine a person charged with an indictable offense; and if he disposed of the cases in that unlawful manner with knowledge of the unlawful nature of his act, and not out of mere ignorance, negligence, or honest mistake, that conduct on his part would be willful and corrupt, and would constitute the offense of misconduct in office and would render him guilty in law.

It does not have to be proved that the magistrate received money for such conduct. A person employed in a judicial capacity to administer the criminal law who accepts employment by the public must act in good faith, and if he willfully perverts his trust, he is acting corruptly in the conduct of his office in the legal meaning of that word, whether he receives money for doing so or not. Such conduct on the part of one whose duty it is to administer the criminal laws impartially strikes at the very foundation of our institutions.

You will therefore have to consider the evidence on the question of his good faith. Being a judicial officer, he is presumed to have acted in good faith until that presumption is overcome by evidence that satisfies

you beyond a reasonable doubt that he did not do so, but on the contrary acted willfully and corruptly, as I have explained those words to you.

Now let us see what the evidence of the Commonwealth is upon this question of good faith. I am not going to review it in all its details, but only point out to you various trends or phases of the evidence and their significance, in order that you may understand the bearing they have upon the charge and apply that in your deliberations. What is the evidence on the part of the Commonwealth?

It is admitted that defendant has been a magistrate since 1930, and chief magistrate since 1934. There is evidence, if you believe it, that back in December 1943 the district attorney notified him by letter that where there was prima facie evidence before him of an indictable offense the law required him to hold the accused to await the action of the grand jury, and that in such cases there was no discretion in the magistrate to impose a fine in lieu of holding the accused. There is also evidence that at a hearing held by him on August 13, 1946, when persons were before him charged with indictable offenses and he said that he was going to fine them, Mr. Propper, an assistant district attorney, objected to the fine and told him that it was not a fineable matter; and that at another hearing before him on April 18, 1947, when other persons were before him charged with indictable offenses and he had said he would fine them, Mr. Cortese, also an assistant district attorney, protested that the hearing was a preliminary one and that he couldn't dispose of it summarily, to which defendant responded: "The case is disposed of." Moreover, there is evidence that it was not once or twice or a few times that he disposed of indictable offenses in that unlawful manner, but that he did so persistently, month after month and year after year, in cases of pool selling and bookmak-

ing, setting up and maintaining lotteries, keeping and maintaining gambling houses, and violations of the liquor law.

As against that evidence on the part of the Commonwealth, witnesses called by the defendant have testified that the inspectors of police in charge of the vice squad frequently requested him as he sat in central police court to dispose of cases of indictable offenses by fining the persons accused when the evidence did not appear to make out a prima facie case but there was some evidence of disorderly conduct, even though disorderly conduct was not among the offenses charged; and also that assistant district attorneys, as well as attorneys for the accused, either advised such unlawful dispositions of cases of indictable offenses or stood by in silence when they were so disposed of, though you will recall that one of the assistant district attorneys testified that he stood silent because previous protests made by him had so often been disregarded by defendant that he thought it useless to continue to protest.

In addition to those witnesses there is further testimony which I think requires special comment, namely, that of Judge McDevitt, who told you that in a conversation between defendant, a now deceased district attorney, and himself, he expressed the opinion that if there were not sufficient evidence to hold an accused for court on an indictable offense a magistrate could properly discharge the accused on the charge before him and, without more, fine him on a charge of disorderly conduct, if there was evidence before him that the accused had been guilty of such conduct. Judge McDevitt also said, as I understood his testimony, that he gave similar private advice to the defendant on a number of other occasions. Without in any sense desiring to dispute the advice which Judge McDevitt tells you he and the district attorney gave defendant, you will recall what I told you is the law of the subject,

and by what I have told you is the law you are bound in this case. I think I should say to you, however, that such testimony, of course, goes to and should be considered only upon the question of good faith that I am leaving to your decision. When you come to consider this part of the testimony I think I should also caution you that the dockets of defendant's court fail to show that in fining the accused in all of those cases there was any such charge as disorderly conduct before him, but on the contrary they show that no charge except the indictable offense was before him, and that upon that charge and that alone he imposed the fine. That is what he has agreed the record shows. If he did that, I again tell you that he acted unlawfully. In view of all the testimony, do you think that in these cases he really acted in good faith when he imposed the fines? That, members of the jury, I leave to your good judgment and common sense.

Now that evidence on the part of the Commonwealth and defendant is for you to consider upon the question of good faith, and if in fact you believe that the magistrate knew he had no power to dispose of the cases in the manner that he did, then no request by or advice from police officers or anyone else, however numerous or eminent, would justify or excuse his doing the unlawful thing he knew he had no right to do.

There is other evidence presented by defendant which you must consider, and that is the evidence respecting the good reputation which the witnesses called by him tell you he has borne in the community as an honest and law-abiding citizen. The good character of a defendant, as indicating the improbability of his doing the acts charged, is to be regarded as a fact like any other tending to establish his innocence, and is to be weighed and considered in connection with all the other evidence in the case. If, however, upon all

the evidence, including that of good character, you are satisfied of his guilt beyond a reasonable doubt, you should convict him; otherwise, you should acquit him.

I must add that reputation evidence is substantive evidence. It is not a make-weight, and like any other piece of evidence in a case may, of itself, raise a reasonable doubt of guilt. Yet you are not required because a man has had a good reputation to think him not guilty if, considering this evidence together with all the other evidence as a whole and not separated from the other evidence, you are satisfied of his guilt beyond a reasonable doubt. That is the law respecting the way you view reputation evidence, and you must, of course, apply it to all the offenses for which he is on trial.

Upon all the evidence do you think that he knew his duty? Did he act in good faith or in bad faith? Did he act as he did because he did not know any better, or because, as the Commonwealth contends, he obstinately took the law into his own hands and would brook no interference? If you are satisfied beyond a reasonable doubt that he did not act in good faith, but willfully and corruptly in the meaning that I have given you, you should not have the slightest hesitation in convicting him.

The next charge for your consideration is a count of corrupt solicitation, which is no. 10 in indictment no. 518, to which I have already referred in connection with the misconduct counts contained in that indictment. The offense of corrupt solicitation, in the meaning here charged, is defined in these words:

"Whoever, directly or indirectly, . . . by threats or intimidation, endeavors to influence any . . . public officer, in the discharge, performance, or nonperformance of any act, duty or obligation pertaining to such office, is guilty of corrupt solicitation. . . ." The Penal Code of June 24, 1939, P. L. 872, sec. 304.

476

It is undisputed that certain officers of the Liquor Control Board arrested a man named Pinto on a liquor violation charge, took him to their office for a short time, during which they questioned and fingerprinted him, and then took him before defendant for a hearing. The hearing was had, and at its conclusion the threat which is the basis of this charge is alleged to have been made by defendant.

In order that you may have clearly in mind just what it is that defendant magistrate is alleged to have said, I am going to read to you from the testimony of Enforcement Officer A. Edward Fruncillo:

"Q. Now then, after the evidence was presented on those charges, then what did Magistrate O'Malley say?

"A. Magistrate O'Malley turned to Officer Hershenhorn and said: 'What do you recommend that I do in this case?' Officer Hershenhorn said: 'This man should be held for court.' Magistrate O'Malley then came up with the statement that he thought that the liquor board had enough power and that they had in other instances prosecuted their own cases, and a citation against this man would have been enough—would be enough punishment. Then he turned to Pinto and said: 'I fine you ten dollars and costs.' After that he turned to me and said: 'I am warning you, keep out of South Philadelphia. If this ever happens again in South Philadelphia, or against anyone in whom I am interested, I will have the man in charge arrested and fined $10,000 in addition,' he said, 'I am going to call a meeting of the Board of Magistrates, and I will instruct them not to issue any more warrants to any members of the Enforcement Bureau of the Liquor Control Board, or if warrants are issued, I will demand that a constable will go along on each arrest to make sure that instead of you men taking in the prisoner to the Liquor Control Board office, that he will be taken instead to the police station'."

As to this alleged threat there is evidence corroborating Fruncillo in some respects given by Officers Carminati and Hershenhorn. While, of course, members of the jury, you will recall that these three officers did not testify in exactly the same words as to what defendant said, but gave different versions of it, I do not think it is necessary for me to read to you or go over in detail what each one said. However, you will bear in mind all that was said by them and determine exactly what language defendant used and whether he actually made a threat against the officers of the Liquor Control Board. Now, if defendant magistrate did order the enforcement officers to stay out of a section of the city where it was their duty to go, and threatened to have the man in charge arrested and fined if they did so, that would constitute corrupt solicitation. Of course, it makes no difference whether the enforcement officers were right or wrong in questioning and fingerprinting the man before they brought him before the magistrate and it makes no difference whether what defendant magistrate said had any effect upon the enforcement officers or not. The offense consists in making the threat, not in its being successful. The question for you is whether the magistrate did make the threat.

In answer to the testimony of Officer Fruncillo and the two other officers who corroborate him, defendant called five witnesses. The first was Pinto, the man arrested in that case, and whom defendant fined. He said, in effect, that nothing in the way of a threat such as was testified to by the officers was made by defendant. Amaroso and Gappilli, as I recall their testimony, denied that the threat was made only to the extent of saying that they did not hear it. Winitz said that he heard only part of what defendant said, and that he did not understand the part which he heard as being an attempt by defendant to dissuade the officers from

doing their duty in the future; and lastly, Magistrate Dogole testified only that he remembered nothing at all upon the subject.

You will remember all the details of what each witness said. You have on the part of the Commonwealth three witnesses who tell you positively, in one form or another, that the threat was made. On the part of defendant you have one witness, the man who was arrested and fined, who says the threat was not made, two who say they did not hear a threat, one who claims he heard only part of what was said and that what he heard was not threatening in character. From that evidence what do you think the truth is? Was the threat made? If you have a reasonable doubt that it was made, as contended by the Commonwealth, you should acquit defendant on this charge; but if you are satisfied of his guilt beyond such a doubt, you should convict him. I am sure you will be able to come to a correct and just conclusion upon this question.

The next indictment is no. 519, which charges defendant magistrate with violating section 3 of the 1937 Magistrates' Court Act by personally engaging in another business.

Section 3 of the act provides as follows:

"No magistrate shall personally engage in any other business or profession, . . . each of the magistrates shall devote his entire time and attention to the duties of his office."

The object of the law in prohibiting a magistrate from personally engaging in any other business is to make certain that in the performance of his public duties he shall be free from the rival claims of a business or profession upon his time and attention. On the other hand, merely investing money as a partner in a business, or buying stock, or accepting an office in a business corporation, without performing any act of

management, control, or service in relation to the business, and without devoting any substantial amount of time and attention to it, would not constitute a violation of the statute.

On this indictment no. 519, for personally engaging in another business, I have carefully considered all of the evidence before you, and in my opinion it is insufficient in volume and quality to justify a conviction. The direct and positive testimony of everyone connected with the management and operation of the Carson Packing Company is that, although defendant had a large financial investment in the company, he devoted no time or attention whatever to the business. Against that, the Commonwealth has shown nothing except that he received certain checks indicating on their face that they represented payments to him for salary and expenses. The mere inference that might be drawn from that fact standing alone is so completely rebutted by all the other positive testimony that a verdict of guilty could represent only a guess that he may have engaged in business as charged in that indictment. This entitles defendant to a directed verdict in his favor, and I therefore instruct you on that indictment to return a verdict of not guilty. The evidence on this charge has nothing to do with any of the other charges on trial before you. You have heard it, however, and hence I instruct you to dismiss it entirely from your minds and not to permit it in any way to influence your consideration of the other charges.

The two indictments remaining for your consideration, nos. 517 and 589, charge defendant with violating sections 14 and 43 of the Magistrates' Court Act of June 15, 1937, P. L. 1743. As to the violations alleged in these indictments it is not necessary for the Commonwealth to prove any evil or corrupt motive

on the part of the magistrate in order to sustain the charges against him. He is positively required to comply with these provisions of the act, and if he failed to do so the only question to be determined is whether he intentionally failed to comply with them. In failing to obey the command of the act, if he did not obey it, his motive is wholly unimportant.

With respect to indictment no. 517, defendant is charged on 52 counts with violating sections 14 and 43(*b*) of the act by granting continuances and allowing further hearings without setting forth in his docket the reasons for so doing.

Section 14 of the act reads as follows:

"No continuance of a hearing of a criminal case shall be granted by a magistrate, unless the person requesting the continuance shall state under oath his or her reason therefor; and the reason stated, together with the name of the party requesting the same, shall be noted by the magistrate in his docket, and shall be returned as a part of the transcript of the case: Provided, that if any case shall be continued by a magistrate of his own motion, such continuance, and his reason for his action, shall be set forth at length by the magistrate in his docket and returned as part of the transcript of the case."

And section 43(*b*) of the act provides as follows:

"It shall be unlawful for any magistrate to . . . allow a further hearing in any criminal case without complying with the provisions of section 14 of this act." This is the section I have just read to you.

With respect to the charges contained in this indictment it has been admitted by counsel that the 52 continuances and further hearings were granted by defendant magistrate as alleged, and that in the books produced by the Commonwealth, exhibits 2 to 109, inclusive, no reason is set forth for his action. I charge

you that Commonwealth's exhibits 2 to 109, inclusive, constitute under the evidence, if you believe it, the dockets of the magistrate within the meaning of the act, although they are not labelled by that name, and it was in those books that it was his duty to make the entries required by the provisions of the act as I have read them to you.

Let me impress upon you that a violation of these requirements of the Magistrates' Court Act is no technical or trivial matter. They are manifestly intended to protect an accused from harassment and oppression through undue prolongation and delays in the disposition of the case against him, and to shut off at the very beginning of a criminal case the opportunity that continued hearings afford for the practice of extortion, bribery, and other grave offenses that pervert the pure administration of justice. They are of obvious value for this purpose, and a strict obedience of them must at all times be enforced. While there is no evidence that bribery and extortion was actually practiced by anyone in these cases, that fact does not lessen the seriousness of a magistrate's failure to obey the law's mandate to make these entries in his docket in every case that comes before him and that he continues.

If you believe the evidence of the clerk of the central police court, which is uncontradicted, Commonwealth's exhibits 2 to 109, inclusive, are the books in which were entered daily all the proceedings of the central police court over which defendant magistrate presided, and are the only books in which such daily entries were made. Under those circumstances they were in law his dockets. Hence, have you any difficulty in finding that the defendant did violate the act on the 52 counts of this indictment? Do you believe that he did? That, of course, is for you to say.

Finally, we have indictment no. 589, wherein defendant is charged on 169 counts with violating section

43(*a*) of the Magistrates' Court Act of 1937. This section of the act provides as follows:

"It shall be unlawful for any magistrate to alter any of his official decisions in any case heard by him, except in the presence of and with the written approval of the prosecutor."

On count no. 39 of this indictment the evidence is insufficient, and I direct you to return a verdict of not guilty on this count no. 39. This leaves 168 counts for your consideration.

What I said to you a moment ago with reference to the importance of compelling a strict obedience to the section of the magistrates' act regarding continuances applies with equal force to the section we are now discussing forbidding alteration of official decisions. To fail to obey it is a grave public wrong, and he who belittles such a failure renders law enforcement a disservice. You, I am sure, will not so view it, and will approach your deliberations on these phases of the case with a due appreciation of their importance.

On a number of these counts the Commonwealth has called the assistant district attorneys who were present in behalf of the Commonwealth at these hearings presided over by defendant. They testified that at the conclusion of the evidence offered in each case defendant magistrate announced his disposition of the case in open court, which disposition the assistant district attorneys noted as they heard and understood it on the hearing sheet from which they have read to you.

As to a number of the counts the Commonwealth has also called the official stenographer, who has read to you the disposition that he heard announced in open court by defendant magistrate at the conclusion of the evidence and that he recorded in his notes.

As to the remaining counts counsel have agreed that the assistant district attorneys and the stenographers not called would, if called, testify to the same effect.

The Commonwealth has also offered on each of these counts what was entered in the docket as the disposition of the case, showing that as to each case the entry was different from the disposition testified to having been previously announced by defendant in open court. You will recall that the act says that the magistrate "shall not alter any of his official decisions in any case heard by him, except in the presence of and with the written approval of the prosecutor," and that during the trial a question was raised as to what constitutes the decision of the magistrate which may not be altered. Now of course, if the entry made in the docket was the decision, then there was no change in the decision; but you have the other evidence before you indicating, if you believe it, that his disposition at the close of the evidence was one thing and what was entered in the docket afterwards was another, and from that the Commonwealth asks you to find that, having made a decision, he subsequently changed it and when he wrote up or had his docket written up afterwards, he entered the changed decision. You can therefore see that the question for you to decide, and the controlling question on these 168 counts of this indictment, is whether he changed his decision after he had made it; and that requires me to tell you what constitutes the magistrate's decision. On this point I charge you that when a case is called for hearing before a magistrate and he hears the evidence and at the conclusion of the evidence announces in open court a disposition of the case and puts that case aside and turns to another case, he has then made his official decision. If later, whether ten minutes later or hours later, another and different disposition of the case is made by him which he orders or permits the clerk

to enter in his docket, that would constitute a violation of the act, unless it was done in the presence of and with the written approval of the prosecutor. Of course, it is not even suggested that any such approval was ever demanded or received by him in any of these cases. Such a change would be as much a violation of the act as if he had had his clerk there in his presence write his decision in the book and later, after the case was over, and another case taken up, had directed or permitted the clerk to cross it out and write in another and different decision. The making of the decision is not suspended until the time it is entered in the book.

I may add that since there is no evidence that any written approval was ever given by anyone to the making of any of these alleged changes, who the prosecutor was in any particular case is of no importance.

I have already told you that whether these alterations were made by defendant for a good motive or a bad motive does not make any difference. The law is definite, and has been enacted by the legislature in the interests of justice and public policy.

Members of the jury, I have explained to you your functions, I have explained to you the offenses charged in the several indictments and the law that is applicable to each. I have not taken up all the evidence, because it would require too much time to do so. Do not infer because I have referred to certain evidence only that it is more important than other evidence. You are the sole judges of the importance or nonimportance of all parts of the evidence, but I have referred to some of it simply to clarify my charge on the law.

You will have to render a verdict upon each of the eight indictments. If you convict defendant on all the counts in an indictment except those that we have eliminated, all you will need to say is that you find defendant guilty. If you acquit on all counts, your

verdict will be simply not guilty. If, however, you convict on some of the counts and acquit on others, you will have to say upon which counts you find defendant guilty.

Let me make it clear to you that you have before you eight indictments. Many of these contain different counts, and as the counts run up into the hundreds, I fear it will be very hard for you, in rendering your oral verdict, to distinguish, without some memorandum to guide you, between the different indictments and the substance of the charges they cover. You have a right, so far as the different indictments are concerned, to convict or acquit defendant upon all or any one or more of them, and with respect to the many counts in each indictment you likewise have the right to acquit or convict him upon any or all of them as you see fit under the evidence. As to those counts which have been eliminated, I will give you a memorandum so that in considering the indictments you will not have to search for the eliminated counts. All the other counts in all the indictments, however, remain before you.

I am also sending out with you a paper on which is written, for your information and convenience, the number of each bill and a statement in simple form of the subject matter of the charges contained in it. Of course, if you distinguish between counts, and convict on some and acquit on others, you need write in the appropriate space only the numbers of the counts on which you convict, and we will consider you to have acquitted him on the counts that you do not mention. These bills are grouped in this paper in the same order in which I have discussed them in my charge, and I think the use of it will help you and your foreman in announcing your verdict.

Our system of law is such that the verdict of a jury must be unanimous. The law requires every member

of the jury to agree upon the verdict rendered, whether it be guilty or not guilty.

In conclusion, I hardly need say to you that this is an important case for both sides. It is obviously important to defendant, and therefore the safeguards that the law throws around him cannot be ignored and must be enforced. The people of this State no more seek the conviction of an innocent man than they wish the acquittal of a guilty one. On the other hand, it needs no argument to show the importance of the case to the community, and if defendant is in your judgment guilty beyond a reasonable doubt, you should so find, without fear or favor, for the interests of the people are not to be disregarded.

That is the case. Take it and consider it with care.

### Charge on Retrial

CARR, P. J., specially presiding, February 2, 1949. —Members of the jury, defendant in this case is and has been for many years a magistrate of the City of Philadelphia. As such he presided from time to time in the central police court in Room 625 City Hall, hearing and disposing of cases of persons brought before him charged with offenses against the criminal laws.

In the two bills of indictment now before us it is alleged that while presiding in that court he violated the Magistrates' Court Act of June 15, 1937. In indictment no. 517 he is accused of granting continuances and further hearings without setting forth in his docket his reasons for so doing; and in indictment no. 589, of altering his official decisions without having first obtained the written approval of the prosecutor. The act expressly and positively prohibits a magistrate from doing either of those things, and all that you will have to decide in this case is whether it is true that he did them.

To begin with, you should know why it is that the legislature has forbidden magistrates to do what this defendant is accused of doing persistently and systematically over a long period of time. Of all the courts, those of the magistrates in a great city are closest to the people. To them the average citizen must ordinarily resort for the redress of his grievances, and to them he must answer when accused of offenses against the law. No other court affects his interests or his welfare so intimately. You can readily realize, therefore, the power a magistrate possesses over the daily lives and happiness of the masses of our people, especially those in difficulty with the criminal law. You can realize, also, the temptations constantly confronting magistrates to use the great powers of their office for their personal and political advantage by granting immunity from criminal penalties for political considerations, or by oppression to extort factional political support. In like manner, the temptation is always strong to extend favors and indulgences to organized crime, which in all great cities controls a vast underworld with many votes. The Magistrates' Court Act of June 15, 1937, was designed with much care to prevent these manifest evils and to place the magistrates' courts upon a high level of responsibility and public usefulness. It regulates in certain well-defined particulars the manner in which magistrates must conduct the business of their courts, and requires them to make a public record of their proceedings by entering daily in their dockets all their official actions. All its provisions are of the utmost importance and value in protecting the public interest in the impartial enforcement of the criminal laws by the magistrates of the city. Do not for a moment be misled into thinking that the failure of a magistrate to obey this law is any mere technical or trivial matter. Nothing could be further from the truth.

By the practice of granting continuances and further hearings without any explanation, opportunities are afforded for the fixing of cases between hearings, for criminal extortion by magistrates, police officers, and others, and for the operation of sinister political influences. Of course, in some cases continuances and further hearings are necessary, and the law does not absolutely prohibit them but it does require a magistrate when he continues a case to set forth at length his reasons for it in his docket.

Likewise, the practice of altering official decisions without the written approval of the prosecutor invites similar abuses, including the remission of penalties and the discharging of prisoners from custody at the solicitation of political and personal friends after the magistrate has once held them for the grand jury.

These provisions of the act were intended to shut the door against the practices I have mentioned. This being so, the Commonwealth is not required in order to convict a magistrate, to prove that he acted with evil or corrupt intent. It is enough to show that he failed to obey the act. Every magistrate is bound to know what the act requires of him, and if he fails to obey it, the offense is complete; otherwise its provisions would have very little effect as a means of correcting the evils at which it is aimed. I hope I have made this clear to you, because it has been argued to you by counsel that even if you find as a fact that he did not obey the act respecting further hearings and the changing of his decisions you should acquit him on the ground that it has not been shown that he did so for any corrupt purpose. That is not the law. The regulations contained in the act apply to the conduct of all magistrates, honest or dishonest. The whole purpose of the act is to prevent any magistrate from following a practice which makes it easy for himself

or any other person to pervert justice. Hence, an honest magistrate who disobeys its regulations is as guilty of violating this law as a dishonest one who does so corruptly. In neither case is the violation picayune or petty, as has been suggested to you. It is far from picayune or petty when a judicial officer breaks the very laws he was sworn to obey and enforce.

In the trial of this case it is your function as jurors to determine the facts, and in determining the facts you are the judges of the evidence, its weight, and the credibility of the witnesses. In deciding whether a witness is believable or not, you should use the same good judgment and common sense you would use in considering the reliability of people with whom you deal outside of court. That is your function: to determine the facts.

Now my function is entirely different: it is to decide and instruct you on all questions of law; and when I tell you what the law is, that is not only the best evidence of it, but it is also the only evidence you have of it, and you must decide the case on the evidence before you and on nothing else.

It will, of course, also be necessary for me to refer to the evidence, but any reference to it that I may make is not intended to control you in the view you take of it, but only to aid you in applying the principles of law I give you to the facts as you find them. I shall not attempt to recite all the evidence in detail, and whatever evidence I omit that you think important you will remember, and give it such weight as in your judgment it deserves. Furthermore, if I inadvertently misstate any part of the evidence, you will take it as you recall it, and not as I do.

In brief, you are to determine what the facts are, then apply to them the law as I give it to you in my official capacity, and thus make up your verdict on

each indictment. You have no concern whatever with the question of any possible penalty that might be imposed upon defendant if you find him guilty. You have no right to permit that question to enter into your deliberations or to become the basis of any verdict you may reach. If defendant is found guilty, you do not punish him. The law puts that on my shoulders, and you are therefore not concerned with that at all. The law says it is my responsibility, and not yours.

Nor have you any concern in this case with the conduct of other magistrates. If any of them violated the law, they were faithless to their duty, and the crime of others is never an excuse for one's own.

In this, as in every criminal case, the law places upon the Commonwealth the burden of proving the guilt of defendant beyond a reasonable doubt. Under our system of law a person accused of crime is presumed to be innocent, and this presumption remains in his favor throughout his trial until it is overcome by proof of guilt beyond a reasonable doubt. If upon a full and fair consideration of all the evidence you have a reasonable doubt of the guilt of defendant, you should acquit him; if you do not, you should convict him. A reasonable doubt is one that would cause you to hesitate to act in any of the important affairs of your own lives; but a doubt that is merely fanciful, that disregards the evidence, or arises merely from sympathy or reluctance to perform a disagreeable duty, is not a reasonable one.

Now in numerical order the first of the two indictments against defendant is no. 517. It contains 52 counts or charges, numbered from 1 to 52, inclusive, and also 52 additional counts with the same numbers followed by the letter (a). All the counts with the letter (a) following a number have been eliminated for reasons of law that I need not take the time to

explain to you, and you are not to consider the eliminated counts at all. Their elimination, however, does not in any manner affect the other 52 counts numbered from 1 to 52, inclusive. In these counts defendant is charged with 52 violations of sections 14 and 43(b) of the 1937 Magistrates' Court Act by granting continuances and further hearings without setting forth in his docket his reasons for so doing.

Section 14 of the act reads as follows:

"No continuance of a hearing of a criminal case shall be granted by a magistrate, unless the person requesting the continuance shall state, under oath, his or her reason therefor, and the reason stated, together with the name of the party requesting the same, shall be noted by the magistrate in his docket, and shall be returned as a part of the transcript of the case: Provided, that if any case shall be continued by a magistrate of his own motion, such continuance, and his reason for his action, shall be set forth at length by the magistrate in his docket and returned as part of the transcript of the case."

And section 43(b) of the act reads:

"It shall be unlawful for any magistrate to . . . allow a further hearing in any criminal case without complying with the provisions of Section 14 of this act." Section 14 is the section I read to you first.

Now to show you that defendant did grant the continuances and further hearings alleged in the 52 counts of this indictment without setting forth the reasons for them in his docket, the Commonwealth has offered in evidence the pages of Exhibits 2 to 39, inclusive, on which the entries relating to those cases appear. I will send out with you a reference to the book and page numbers, so that you will not have to search for them. These are the books which have been identified by the clerk of the central police court as the dockets

in which all the proceedings of the presiding magistrate were entered daily at or before the close of each day's business. They show that defendant presided at the hearing of those cases, that he granted the continuances and further hearings, and they fail to show any reason whatever for that action. The clerk, as you will recall, testified further that there were certain other books labeled as dockets, which he termed "Warrant Dockets" and "No Warrant Dockets," and the nature of which he described to you. These so-called "Warrant" and "No Warrant" dockets, as well as all other records that the clerk tells you were kept in the court, were also offered in evidence by the Commonwealth and are here for you to see. They likewise fail to show any reason for granting the continuances and further hearings.

Now, members of the jury, examine all these books. Do you find in any of them any entry showing a reason for a single one of the continuances or further hearings? Did defendant enter in his docket his reasons for doing that, as the law requires? Does not the utter absence of such entries speak for itself?

At this point I tell you that defendant cannot be excused for failing to do what the law requires merely because he left it to the clerk to keep the books for him, if he did. The section of the act which I read to you plainly says that "his reason for his action shall be set forth at length *by the magistrate* in his docket." This clear language of the act made it the duty of defendant either to do it himself or to see to it that it was done. He could not, by leaving it to others, avoid his own responsibility. It does not make the slightest difference who employed or paid the man who acted as clerk in the central police court, nor does it matter whether that particular clerk knew what the Magistrates' Act required. While presiding

in that court defendant had full control of that man and all others employed in it. If a magistrate were permitted to shirk his duty in that way, the very purpose for which the act was passed would be defeated, and its provisions rendered valueless to prevent the public injury it was designed to guard against.

Another matter that I must make perfectly clear to you is that whenever a magistrate undertakes to perform a magistrate's duties, whether it be in his own court or the central police court, or anywhere else, he is bound to observe and obey each and every provision of the Act of 1937. Defendant could not, while acting in that capacity, divest himself of the character of a magistrate, nor free himself from the obligations that the act imposes upon every magistrate who assumes to perform the functions of that office.

Moreover, I instruct you that the informal nature and character of the books and records maintained in the central police court could not excuse defendant from entering in them the particular information that the law requires him to enter. It is unimportant by whom the books were supplied or how defective they may otherwise be; that information must be there so that anyone may read it. The only matter that concerns you is whether or not he put it in the books. Did he put it in any of the records of the court? That is a simple question of fact. You have the books. Look at them. Are the reasons for the continuances there? If they are not, render a true verdict under the law as I have explained it to you.

These are questions which lie at the root of this case, and because of the debates between counsel in your presence, I have given you these instructions definitely and explicitly in order to clear up any possible confusion in your minds as to what the law actually is. That, I tell you, is the law of this case. Follow it,

without fear or favor, and render a true verdict under the law as I have given it to you.

I turn now to indictment no. 89. As originally drawn it contained 170 counts, numbered from 1 to 170, inclusive, and a like number of counts followed by the letter (a). From this indictment the counts followed by the letter (a) have, for reasons of law, been eliminated; and in addition, other counts, of which I will give you a list, have also been eliminated, so that there remain 154 counts charging the defendant with violating section 43(a) of the act by altering his official decisions without the written approval of the prosecutor. That section reads as follows:

"It shall be unlawful for any magistrate to review, alter, modify or remit any sentence of fine or imprisonment lawfully imposed by him, or to alter any of his official decisions in any case heard by him, except in the presence of and with the written approval of the prosecutor."

You can see from that language that before a magistrate can change any of his official decisions he must obtain from the prosecutor a consent to do so in writing. Did he have that written consent in any of these cases? There is evidence that he did not obtain it in a single instance. The clerk has testified that there is no record of any consents filed during the years covered by the indictment, and his testimony is uncontradicted. Hence, the only question for you to decide is whether he did change his decisions. You will therefore need to know what constitutes the magistrate's official decision. On this point I instruct you that when a case is called for hearing before a magistrate and he hears all the evidence and at the close of the evidence announces in open court his disposition of the case, puts that case aside and turns to another case, he has then made his official decision. The dis-

position of the case announced by him at the conclusion of the hearing in that case is in law his official decision. Make no mistake about that. He has heard all the evidence, and the decision he makes at that time is final and cannot be changed by him without the written consent of the prosecutor. Having heard his decision publicly announced, the persons interested in the proceeding are entitled to consider the case decided, and go about their other business. If later, whether minutes or hours later, and for whatever reason, good or bad, he makes another and different disposition of the case, he has altered his decision; and without the written consent of the prosecutor, he has done it illegally and criminally. That is the law of the case, and I am sure you will have no difficulty in understanding it.

As to 24 of the 145 counts defendant has presented a defense depending upon the testimony of witnesses called by him, that as to those particular cases he changed his decision while the case was still before him and before he passed to another case. Whether he did that or not is a question entirely for you. Of course, if you believe that he did that, then as to those 24 counts you could properly bring in a verdict of not guilty. I will give you a memorandum of the numbers of those counts. I recall no evidence in the case that such a defense has been presented with respect to the remaining 130 counts. As to all the 154 counts, however, there is evidence presented by the Commonwealth that at the conclusion of the hearing of the case defendant announced his decision from the bench, but that another and different decision was later entered in the docket. The decisions that were entered in the dockets are shown by the books themselves; and to show that the decisions which were entered in them were different from the decisions previously announced by

defendant from the bench at the close of the hearings, you have in a number of cases the testimony of the official stenographers, who read to you from their stenographic notes, and also in every case you have the typewritten and certified transcript of their notes. Those transcripts the law requires to be "taken and held to be prima facie correct"; that is to say, they are to be considered, in the absence of any proof to the contrary, as correctly showing what happened at the hearings to which they relate. In the light of that evidence, considered with what appears in the dockets, have you any question that the official decisions of this defendant in the cases to which they refer were in fact unlawfully changed? That is for you to say.

You will have to render a verdict upon each of the two indictments. If you convict defendant on all the counts of an indictment except those that have been eliminated, all you need to say is that you find defendant guilty. If you acquit on all counts, your verdict will be simply not guilty. If, however, you should convict on some of the counts and acquit on others, you will have to say upon which counts you find defendant guilty and on which not guilty. You must all agree upon your verdict. A verdict of a jury must be unanimous.

Defendant has submitted a number of points for charge. Point no. 31 I affirm and will read to you:

"31. You must consider each count of the indictment separately, and to find defendant guilty on any particular count you must be convinced of his guilt on that count beyond a reasonable doubt."

The remaining points I refuse, for various reasons, and have instructed the stenographer to set forth in the record the points at length and my reasons for refusing them.

You will recall what I said to you in the beginning about the object and purpose of the Magistrates' Court

Act of 1937, the mischief it was designed to remedy, and the importance that every magistrate obey all its requirements. For a magistrate not to obey it is a serious dereliction of duty and a grave offense against public justice, whether or not there was any corrupt motive for his failing to do so. Nor is ignorance of the law any excuse. A magistrate is bound to know and understand what the law requires him to do. Mere ignorance of the law and one's duties excuses no one, whatever his station in life may be. The highest and lowliest of us are on an equal footing before the law.

Now the case is in your hands. Try sincerely to do right, without partiality or prejudice. The only proper end of any trial is a true verdict according to the law and the evidence.

The alternate jurors, nos. 13 and 14, Mrs. Mitchell and Mr. Murphy, who were selected to replace any of the original 12 who might become incapacitated, are now excused, with the thanks of the court. The jury of 12 may now retire to consider and make up their verdicts.